UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 10-50118-01-JLV |
| | ) | |
| Plaintiff, | ) | ORDER DETERMINING |
| | ) | COMPETENCY OF |
| vs. | ) | DEFENDANT |
| | ) | |
| LUIS OLIVARES, | ) | |
| | ) | |
| Defendant. | ) | |

**Procedural History**

On January 23, 2012, upon motion of both parties, the court ordered that a psychiatric or psychological examination of defendant Luis Olivares be conducted pursuant to 18 U.S.C. §§ 4241(b) and 4247(b) and a report be filed with the court pursuant to 18 U.S.C. § 4241(b) and the provisions of 18 U.S.C. § 4247(c). (Docket 624). On April 11, 2012, the court received Mr. Olivares' forensic evaluation from the Englewood Federal Detention Center in Englewood, Colorado. (Docket 699). Pursuant to 18 U.S.C. §§ 4241(a) and (c) and § 4247(d), the court held a competency hearing on April 20, 2012. (Docket 701). During the hearing, the parties stipulated to Mr. Olivares' present mental incompetence and his need for restoration treatment. (Docket 702). On April 20, 2012, the court committed Mr. Olivares to undergo a period of hospitalization and treatment not to exceed four months to determine whether

there was a substantial probability his competency to stand trial could be restored pursuant to 18 U.S.C. § 4241(d). (Docket 704).

On May 31, 2012, Mr. Olivares was admitted to the Federal Medical Correctional Facility at Butner, North Carolina. On October 11, 2012, Mr. Olivares' certificate of restoration of competency to stand trial with a corresponding report was issued by the medical staff of FMC Butner. (Docket 863). Mr. Olivares filed objections to the report. (Docket 878). On November 9, 2012, the court held a status conference. (Docket 882). During the hearing, the parties stipulated to issues regarding the competency report and stipulated to the need for further mental evaluation at a different facility.

On December 14, 2012, the court entered an order of commitment and Mr. Olivares was admitted to the Federal Medical Correctional Facility at Devens, Massachusetts. (Docket 892). On July 25, 2013, the court received a report issued by the medical staff at FMC Devens concluding Mr. Olivares was not suffering from a major mental illness which would preclude him from understanding the nature and consequences of the proceedings against him or in assisting properly with his defense. (Docket 926).

On September 20, 2013, Mr. Olivares moved for a local psychiatric or psychological examination pursuant to 18 U.S.C. § 4241. (Docket 940). The court granted the motion on September 30, 2013, and ordered that a psychiatric or psychological examination of Mr. Olivares be conducted by Dr.

Stephen P. Manlove.  (Docket 945).  On February 2, 2014, the court received a report issued by Dr. Manlove concluding Mr. Olivares was not suffering from a mental impairment, had a rational ability to consult with counsel, and had a factual and rational understanding of the proceedings.  (Docket 990).

Pursuant to 18 U.S.C. §§ 4241(a) and (c) and § 4247(d), the court held a competency hearing on February 27, 2014, and March 18, 2014.  Mr. Olivares appeared in person and through his counsel, John Rusch.  The government appeared in person by Assistant United States Attorney Ted McBride and telephonically by Assistant United States Attorney John Haak.  The following individuals testified either in person or by video at the competency hearing: Dr. Shawn Channel, Ph.D., Psychologist; Dr. David Morrow, Ph.D., Forensic Psychologist; Dr. Stephen P. Manlove, M.D., DFAPA, Psychiatrist; Gary Colbath, Assistant Federal Public Defender; Captain Brook Haga, Pennington County Jail; and Luis Olivares.

## **Discussion**

A defendant is incompetent to stand trial if it is shown "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(d).  In assessing a defendant's competency, the court may consider various factors,

including expert medical opinions and its own observations of the defendant during the proceedings. United States v. Denton, 434 F.3d 1104, 1112 (8th Cir. 2006). Medical opinions on the mental competency of a defendant are generally persuasive evidence. United States v. Mueller, 661 F.3d 338, 352-53 (8th Cir. 2011). "[I]n crediting an expert's opinion, it is not the opinion itself that is important, but the rationale underlying it." United States v. Ghane, 593 F.3d 775, 781 (8th Cir. 2010) (citations omitted).

"Not every manifestation of mental illness demonstrates incompetence." Vogt v. United States, 88 F.3d 587, 591 (8th Cir. 2006). "That a defendant suffers from a mental deficiency or demonstrates 'bizarre, volatile, and irrational behavior' does not necessarily make him incompetent to stand trial." Ghane, 593 F.3d at 779 (quoting Vogt, 88 F.3d at 591). "[I]t is incumbent on the district court to base its competency determination on the defendant's current state of mind to the extent it is ascertainable from the information available." Ghane, 593 F.3d at 779-80; see also United States v. Jimenez-Villasenor, 270 F.3d 554, 559 (8th Cir. 2001) ("In determining whether a defendant is competent to stand trial, the test is whether the defendant had 'a sufficient present ability to consult his lawyer with a reasonable degree of rational understanding—and whether the defendant ha[d] a rational as well as factual understanding of the proceedings against him.' ") (quoting Vogt, 88 F.3d at 591).

"There are two elements to a competency finding: (1) whether 'the defendant has a rational as well as factual understanding of the proceedings against him,' and (2) whether the defendant 'is able to consult with his lawyer with a reasonable degree of rational understanding.'" Ghane, 593 F.3d at 780 (quoting United States v. Denton, 434 F.3d 1104, 1112 (8th Cir. 2006))

**A.     Is Mr. Olivares able to understand the nature and consequences of the proceedings against him?**

First, the court must determine if Mr. Olivares suffers from a "mental disease or defect" that prevents him from understanding the nature and consequences of the proceedings. This requires "a rational as well as factual understanding of the proceedings." Ghane, 593 F.3d at 780.

Neither Dr. Channel nor Dr. Manlove observed Mr. Olivares showing any symptoms consistent with a mental illness. Dr. Channel, a forensic psychologist, made the following conclusions in his forensic mental health evaluation:

> [Mr. Olivares' evaluations] clearly illustrated gross exaggeration of mental health and cognitive symptoms. Since his arrest in November 2010, Mr. Olivares has made an evolving number of accusations regarding the behavior of others which, in general, suggest he is innocent of the charges and is being "set up." Although Dr. Morrow offered the opinion these were delusional beliefs, this conclusion was counter to the fact that Mr. Olivares has no history of mental illness and generally ignored data which indicated significant exaggeration of symptoms. The accusations the defendant has made since his arrest for the current offense are motivated by failure to accept responsibility and vengefulness. In sum, his behavior and accusations are not driven by a mental illness or delusional beliefs, but are the result of volitional behavior. . . . Mr. Olivares deliberately

5

> sabotaged the most recent interview pertaining to his knowledge of the legal system by deliberately providing false responses.
> . . .
> The defendant chooses to perseverate on false accusations about the behavior of others, rather than focus on a defense for his alleged criminal behavior.

(Docket 926 at pp. 23-24).

Dr. Channel reported Mr. Olivares understood he was being charged with possession of methamphetamine and accurately identified the current charge as a felony. Id. at p. 20. However, despite giving Dr. Morrow an accurate description of the trial process in 2012, Mr. Olivares' responses to the same questions given by Dr. Channel contained significant discrepancies. Id. at p. 21. Dr. Channel testified at the hearing that Mr. Olivares had no history of mental health problems prior to his arrest on the current charges. Based on his interviews with Mr. Olivares and Mr. Olivares' performance on psychological tests used to identify mental illnesses, Dr. Channel opined Mr. Olivares was deliberately being dishonest regarding knowledge he had about the legal system. Dr. Channel testified Mr. Olivares' test scores on psychological tests suggested an exaggeration or making up entirely his memory deficit, and intelligence tests indicated he was putting forth efforts to do poorly. Dr. Channel testified Mr. Olivares did worse on tests used to identify malingering than 100 percent of patients with known mental impairments.

Counsel for Mr. Olivares questioned Dr. Channel regarding the theories Mr. Olivares expressed since the beginning of this case, including beliefs agents who investigated the case were dirty, had planted evidence against him, and

that doctors evaluating him were bought out by the prosecution. Dr. Channel testified it was his opinion these theories were not delusions. He opined Mr. Olivares did not have a real belief in these theories, but instead they were the product of secondary gain or a behavior used to obtain a secondary result. Dr. Channel testified it was his opinion, based on the testing completed by Mr. Olivares and his interviews with him, that Mr. Olivares understood the nature and consequences of the proceedings against him.

Dr. Manlove, a forensic psychiatrist, conducted an independent psychological examination of Mr. Olivares. Dr. Manlove reached the following conclusions in his forensic psychiatric evaluation:

> a. Mr. Olivares had non-bizarre paranoia (paranoid beliefs which are plausible, such as that the police used information to set him up) when I interviewed him. During my examination he did not show evidence of fixed delusions. He had the ability to consider alternative explanations for the issues which made him paranoid, thus he had more cognitive flexibility than one would see in a person with fixed delusions. This cognitive flexibility gave him the ability to consult with his attorney with a reasonable degree of rational understanding. It also gave him the ability to move through the paranoia he had about the legal system and have a rational understanding of the proceedings against him.
>
> b. . . . .
>
> Mr. Olivares may have hallucinatory experiences which he dramatizes in certain circumstances. Whether he has them or not, they do not render him incompetent to stand trial. Though he indicated that he had hallucinations in an ongoing way, even while I interviewed him, I never saw evidence that hallucinations interfered with his thought processes or reasoning.

(Docket 990 at p. 11).

During the competency hearing, Dr. Manlove testified it was his opinion Mr. Olivares' theory regarding agents setting him up was an alternative hypothesis used to escape responsibility. Dr. Manlove opined that although Mr. Olivares would be "difficult to represent," he was not incompetent.

Gary Colbath, Jr., Assistant Federal Public Defender ("AFPD"), also testified at the competency hearing. Mr. Colbath was appointed to represent Mr. Olivares following his arrest and represented him for nearly a year before Mr. Olivares' current counsel was appointed. Mr. Colbath testified he has been an AFPD for more than 10 years and based on his experience representing criminal defendants and his interaction with Mr. Olivares, he did not have concerns regarding Mr. Olivares' competency. Mr. Colbath testified he did not believe Mr. Olivares suffered from mental illness and never discussed a competency evaluation with him. Mr. Colbath testified Mr. Olivares understood the charges and evidence against him and believed Mr. Olivares asked appropriate questions during the course of his representation. Regarding Mr. Olivares' theory that law enforcement set him up, Mr. Colbath testified it was not unusual in his experience for criminal defendants to believe they were set up by law enforcement.

The court also questioned Mr. Olivares during the competency hearing and found his responses to be appropriate. It was apparent Mr. Olivares understood the court's questions related to the waiver of the attorney/client

privilege and his right to testify at the hearing. The court believes Mr. Olivares has a rational understanding of the proceedings and a general understanding of the legal process. This is supported by Dr. Manlove's report which indicates Mr. Olivares had "reasonable responses" to the majority of questions asked during his evaluation. (Docket 990 at p. 11). The court finds it significant both Dr. Channel and Dr. Manlove found Mr. Olivares understood the nature and consequences of the proceedings against him. Both doctors discussed Mr. Olivares' alleged delusions and found that Mr. Olivares does not suffer from a mental disease or illness that would render him incompetent to understand the nature and consequences of the proceedings against him. There is no evidence Mr. Olivares' cognitive ability would prevent him from understanding the nature and consequences of the proceedings.

**B.    Is Mr. Olivares able to properly assist in his defense?**

The second prong of the test to show incompetence requires a finding that because of a mental disease or defect, Mr. Olivares is unable to assist properly in his defense. Stated otherwise, he must be able to consult with his lawyer "with a reasonable degree of rational understanding." Ghane, 593 F.3d at 780.

Dr. Channel concluded that although Mr. Olivares chooses to be consumed with "false accusations about the behavior of others, rather than focus on his defense for his alleged criminal behavior, Mr. Olivares is capable of

communicating effectively and actively participating in his defense if he chooses to do so." (Docket 926 at p. 24). Likewise, although Dr. Manlove opined Mr. Olivares may be "difficult to represent," Olivares has a rational understanding of his case and has the ability to rationally assist counsel in his defense.

Apart from Mr. Olivares' theory he was set up by agents and that doctors are working for the prosecution, there is no evidence Mr. Olivares is suffering from a mental disease or defect, and no reason why he cannot assist properly in his defense. See Ghane, 593 F.3d at 779 ("That a defendant suffers from a mental deficiency or demonstrates 'bizarre, volatile, and irrational behavior' does not necessarily make him incompetent to stand trial.") (quoting Vogt, 88 F.3d at 591). Mr. Olivares' theories may simply represent his efforts to avoid the consequences of the alleged criminal behavior.

Based on this analysis, the testimony provided during the competency hearing, the mental health evaluation reports, and the court's observation of Mr. Olivares, the court adopts the conclusions reached by Dr. Channel and Dr. Manlove and concludes Mr. Olivares is competent to assist in his own defense and stand trial. Accordingly, it is hereby

ORDERED that the court finds by a preponderance of the evidence that Mr. Olivares is able to understand the nature and consequences of the

proceedings against him, is able to assist properly in his defense, and is competent as contemplated by 18 U.S.C. § 4241(a).

    IT IS FURTHER ORDERED that a trial date shall be promptly set.

Dated March 30, 2014.

                      BY THE COURT:

                        /s/ *Jeffrey L. Viken*
                      JEFFREY L. VIKEN
                      CHIEF JUDGE