UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>   vs.<br><br>LUIS OLIVARES,<br><br>               Defendant. | CR. 10-50118-01-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant Luis Olivares, appearing *pro se*, filed a motion for compassionate release pursuant to the statutory provisions of the First Step Act,[1] particularly an amendment to 18 U.S.C. § 3582(c)(1)(A).[2]  (Docket 1398). In a supplemental submission, Mr. Olivares seeks First Step Act relief asserting he should no longer be classified as a career offender under 18 U.S.C. § 851 because his prior drug offense convictions should not be considered a "valid basis for enhancement purposes[.]"  (Docket 1403 at p. 1).  Counsel was subsequently appointed to represent Mr. Olivares and filed a supplement to the defendant's *pro se* motion.  (Docket 1427).  The government opposes Mr.

---

[1]On December 21, 2018, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("First Step Act") was signed into law.  United States v. McDonald, 944 F.3d 769, 771 (8th Cir. 2019).

[2]Mr. Olivares, appearing *pro se*, separately filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 asserting issues unrelated to the present motions.   See Olivares v. United States, CIV. 18-5012 (D.S.D. 2018).

Olivares' motions.   (Dockets 1402, 1407 & 1430).   Mr. Olivares filed a reply

brief in support of his motion.   (Docket 1436).

          For the reasons stated below, Mr. Olivares' motions are granted in part

and denied in part.

## FACTUAL BACKGROUND

          In January 2011, a grand jury charged Mr. Olivares and 15 co-

defendants in a multi-count indictment.[3]   (Docket 22).   Count I charged Mr.

Olivares with conspiracy to distribute methamphetamine in violation of

21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) & 846.   Id. at pp. 1-2.   In counts II, III &

IV, Mr. Olivares was charged with possession of firearms in furtherance of a

drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); being a felon in

possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2); and

being a fugitive from justice in possession of firearms in violation of 18 U.S.C.

§§ 922(g)(2) & 924(a)(2), respectively.[4]   Id. at pp. 2-4.   In count V, Mr. Olivares

and one co-defendant were charged with possession with intent to distribute

methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A).[5]   Id. at

---

[3]The offenses of conviction and sentences imposed on the 15 co-
defendants are discussed later in this order.

[4]Counts II-IV involved the same seven firearms.   See Dockets 22 at
pp. 2-4 & 1086 at pp. 17, 20 & 23.

[5]In counts VI, VII and VIII, co-defendants of Mr. Olivares were charged
with possession with intent to distribute methamphetamine in violation of
21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A) or 841(b)(1)(C).   (Docket 22 at pp. 4-5).

pp. 4-5.   In count IX, Mr. Olivares was charged with distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).   Id. at pp. 5-6.   In count X, Mr. Olivares was charged with distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).[6]   Id. at p. 6.

Thirty-eight days before trial, the government filed an information pursuant to 21 U.S.C. § 851 ("851 Information").   (Docket 1058).   The 851 Information alleged Mr. Olivares had two prior felony drug convictions.   Id. Those alleged convictions were identified as:

(1)   A judgment of conviction entered in District Court, Adams County, Colorado, on or about December 3, 2003, for a controlled substance conspiracy, Case No. 2003CR002076. Id.; see also Docket 1058-1 ["Adams County conviction"]; and

(2)   An amended judgment of conviction entered in District Court, Arapahoe County, Colorado, on or about April 19, 2006, for possession of more than one gram of a Schedule II controlled substance, Case No. D0032004CR003021.   See Dockets 1058 & 1058-2 ["Arapahoe County conviction"].

During the pretrial conference, the court found the government timely provided notice of its intent to seek an enhanced punishment pursuant to 21 U.S.C. § 851(a).   (Docket 1076 ¶ A).

---

[6]In counts XI and XII, two co-defendants were charged with distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C). (Docket 22 at p. 6).   In counts XIII through XX, six co-defendants were charged with the use of a communication facility in causing and facilitating the commission of the acts of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 843(b).   Id. at pp. 6-7.

3

On December 10, 2014, following an eight-day trial, a jury found Mr. Olivares guilty of the following offenses:

Count 1:    Conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) & 846;

Count 2:    Possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A);

Count 3:    Felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2);

Count 4:    Fugitive in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(2) & 924(a)(2);

Count 5:    Possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) & 846; and

Count 9:    Distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) & 846.

(Dockets 22[7] & 1118).[8]   The court ordered the preparation of a presentence investigation report ("PSR") in advance of sentencing.   (Docket 1124).   A PSR was prepared.   (Docket 1157).

At the sentencing hearing on May 27, 2015, the court considered the arguments and the parties' submissions on the 851 Information.   (Docket

---

[7]Prior to trial, the court granted the government's motion to dismiss counts VI, VII, VIII and X of the superseding indictment as those counts related to Mr. Olivares and six co-defendants.   (Docket 401).

[8]To avoid jury confusion and prejudice to the defendant, count IX of the superseding indictment was identified as count 6 in the court's jury instructions and the verdict form.

1207 at pp. 9-28).   The court found both prior drug offense convictions valid.[9]
Id. at pp. 27:19-28:8.   At the time of Mr. Olivares's convictions and
sentencing, 21 U.S.C. § 841(b)(1)(A) provided "[i]f any person commits a
violation under this subparagraph . . . after two or more prior convictions for a
felony drug offense[10] have become final, such person shall be sentenced to a
mandatory term of life imprisonment without release[.]"[11]

At sentencing, the court imposed the following sentences:

| Count I | Conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846 & 851 | Life concurrent to counts 3, 4 & 9 |
|---|---|---|
| Count 2 | Possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) | Five years consecutive to all other counts |
| Count 3 | Felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2) | Ten years concurrent to counts 1 & 5 |
| Count 4 | Fugitive in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(2) & 924(a)(2) | Ten years concurrent to counts 1 & 5 |
| Count 5 | Possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846 & 851 | Life concurrent to counts 3, 4 & 9 |

[9]The court filed a written order addressing the 851 Information.   (Docket 1182).

[10]"The term 'felony drug offense' means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State . . . that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." (Docket 1182 at p. 8) (citing 21 U.S.C. § 802(44); other reference omitted).

[11]See Federal Criminal Code and Rules, Thomson Reuters West Law (2014 ed.).

| | | |
|---|---|---|
| Count 9 | Distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846 & 851 | Ten years concurrent to counts 1 & 5 |

(Docket 1166 at pp. 1-2).   Because of the life sentences, the court imposed no term of supervised release.   Id. at p. 3.

On June 5, 2015, Mr. Olivares appealed the convictions and judgment to the United States Court of Appeals for the Eighth Circuit.   (Docket 1168).   On December 9, 2016, the Eighth Circuit affirmed the decision of the district court.   (Docket 1297; see also United States v. Olivares, 843 F.3d 752 (8th Cir. 2016)).

## ANALYSIS

While Mr. Olivares' submissions assert several collateral arguments involving a number of conspiracy theories and allegations against nearly everyone who had any involvement in his case, there are two concrete arguments which must be addressed.   These arguments relate to §§ 401 and 404 of the First Step Act.

The supplements to Mr. Olivares' *pro se* motion assert that because of the First Step Act, his drug convictions no longer qualify him as a career offender and subject to mandatory life sentences.   (Dockets 1403 at p. 1 & 1416 at p. 1).   His attorney's supplemental brief more properly addresses the career offender issue and the § 401 changes in enhanced mandatory minimum sentences.   (Docket 1427).

6

First, defendant challenges the factual basis of his prior Colorado convictions as the controlled substance under C.R.S. § 18-18-405, morpholine, "is not included in the federal definition of controlled substances."  Id. at p. 6. Asserting the Colorado statute is "overbroad," Mr. Olivares argues his two prior Colorado convictions "were not qualifying 21 U.S.C. § 841 priors."  Id. at p. 8.

In support of his argument, defendant points to Johnson v. Barr, 967 F.3d 1103 (10th Cir. 2020).[12]  Id.   Although brought under the Immigration and Nationality Act, defendant contends the conclusion in Johnson that a Colorado conviction for possession of a Colorado schedule II controlled substance is not a "categorical approach" to the federal controlled substance scheme and should provide for a proper analysis and conclusion in his case.   (Docket 1427 at p. 8) (referencing Johnson, 967 F.3d at 1107). Because the Johnson court found the Colorado drug statute was both overly broad and indivisible, Mr. Olivares submits the court held the "state drug conviction 'cannot qualify as a predicate' under the applicable federal definitions."  Id. at p. 9 (citing Johnson, 967 F.3d at 1107).

Next, Mr. Olivares argues this court already held that "consideration of extraordinary and compelling reasons under 18 U.S.C. Section 3582(c)(1)(A)(i) is not tied to U.S.S.G. Section 1B.1.13 cmt. N. 1(A)-(C)[.]"  Id. (citing United States v. Janis, CR. 16-50126, 2020 WL 7213820 at *7 (D.S.D. Dec. 4, 2020).

_____

[12]Johnson specifically addressed the inclusion of morpholine in the Colorado controlled substance statute.   Johnson, 967 F.3d at 1106.

For this reason, Mr. Olivares asks the court to look to the 18 U.S.C. § 3553(a) factors and modify his sentence to a total combined term of 15 years.   Id. Among the § 3553(a) factors, defendant points to the sentences received by his 15 co-defendants who receives sentences ranging from probation to incarceration of up to 120 months.   Id. at pp. 9-10.

Mr. Olivares' final argument is that the First Step Act reduced the mandatory life sentence to 25 years for a defendant with two or more prior serious drug felony convictions and reduced the 20-year mandatory sentence to 15 years for a defendant with one serious drug felony conviction.   Id. at p. 12.   For the same reason he is seeking a 15-year sentence in his first argument, Mr. Olivares submits because he has only one prior serious drug felony, 15 years is the mandatory minimum required under the First Step Act. Id.   He asserts these changes in the "statutory framework can, in and of themselves, constitute 'extraordinary and compelling reasons' in the . . . context" of the First Step Act.   Id. at 13 (referencing United States v. Cooper, 996 F.3d 283, 289 (5th Cir. 2021) ("We leave for the district court to consider, in the first instance, whether the nonretroactive sentencing changes to his § 924(c) convictions, either alone or in conjunction with any other applicable considerations, constitute extraordinary and compelling reasons for a reduction in sentence.").

8

The government opposes Mr. Olivares' § 404 motion.   (Docket 1407 &
1430).   The government argues defendant's claim for relief can only be brought
through a 28 U.S.C. § 2255 petition.   (Docket 1430 at p. 6).   It contends:

> Although the Eighth Circuit noted that "[t]he law is unsettled in this
> circuit about what reasons a court may consider extraordinary and
> compelling under § 3582(c)(1)(A)(i)" . . . . [the court] concluded that
> despite the fact that he is relying on decisions issued after his
> sentence, "his challenges to the career offender determination was
> still a challenge to his sentence" . . . . and a post-judgment motion
> that fits the description of a motion to vacate, set aside, or correct a
> sentence should be treated as a § 2255 motion.

Id. at p. 7 (citing United States v. Rodd, 966 F.3d 740, 747-48 (8th Cir. 2020).
Based on this analysis, the government believes Mr. Olivares' "motion for
compassionate release should be denied, and if timely and appropriate[ly]
raised in his § 2255 motion, these issues can be addressed there."   Id. at
pp. 8-9.

The government recognizes "Section 404 of the First Step Act . . . makes
retroactive the portions of the Fair Sentencing Act of 2010 . . . that lowered the
threshold quantities triggering different statutory penalties for certain offenses
involving cocaine base (crack cocaine)."   (Docket 1407 at p. 2) (internal citation
omitted).   Because Mr. Olivares "was convicted of offenses involving
methamphetamine" not crack cocaine, the government argues he "is not
eligible for a reduction of his sentence pursuant to the First Step Act."   Id. at
p. 3 (references omitted).

9

As Mr. Olivares was "sentenced prior to December 2018," the government argues "Section 401 of the First Step Act is, by its express terms, not applicable."  (Docket 1430 at p. 9) (citing United States v. Stitt, Criminal No. 03-259, 2021 WL 826744, at *2 (W.D. Pa. Mar. 4, 2021)).   As additional authority for its position, the government refers the court to an opinion from the District of South Dakota, United States v. Chantharath, 4:10-cr-40004-01 (D.S.D. 2010), Docket 1008.   In Chatharath, having concluded § 401 is not retroactive, the government points out the district court held it "cannot circumvent the clear directive of Congress by granting a sentencing reduction . . . for 'extraordinary and compelling reasons' under 18 U.S.C. § 3852(c)(1)(A)(i)."  (Docket 1430 at p. 10).   Because the Eighth Circuit summarily affirmed the district court in Chatharath, the government contends that decision is binding authority as to Mr. Olivares' issues before this court. Id. at p. 11.

Separately, the government points out "[t]he Eighth Circuit Court of Appeals has . . . been clear that, unless expressly provided, the First Step Act amendments are not retroactive and 'apply only to a conviction entered on or after the date of the enactment of this Act.' "  Id. (citing United States v. Massey, 956 F.3d 1076, 1079 (8th Cir. 2020).   Because defendant's "sentence was properly based on the law at the time he was sentenced," the government concluded Mr. Olivares' sentence "does not merit review . . . in the present circumstances."  Id. at p. 13.   In the event the court is considering a sentence

modification, the government contends "[t]he § 3553(a) factors strongly disfavor a sentence reduction." <u>Id.</u> at p. 15.

In reply, Mr. Olivares argues:

> While they can be considered in tandem, . . . [his] main arguments are the questionable nature of his prior convictions used to enhance his sentence to mandatory life in prison, the FSA changes . . . that mandatory life sentence, and the proportionality of his sentence compared to his co-conspirators are all "extraordinary and compelling" reasons why the Court should reduce his sentence.

(Docket 1436 at p. 5).   Because of the nonretroactive nature of § 401 standing alone, Mr. Olivares argues his "only avenue for relief from a mandatory life sentence, which Congress itself has recognized as unjust and excessive, is the compassionate release process." <u>Id.</u> at p. 7.

Mr. Olivares cites to several appellate and district court decisions which refused to characterize § 401 challenges as habeas actions but instead consider those claims as requests for compassionate release.   <u>Id.</u> at pp. 8-12 (references omitted).   Based on those decisions, Mr. Olivares submits "what is clear is those courts granted relief in the compassionate release context."   <u>Id.</u> at p. 12.   Defendant asserts:

> [T]he new [First Step Act] sentencing regime, along with the questionable prior convictions which were used to enhance his sentence, present strong "extraordinary and compelling" reasons why [his] life sentence should be reduced. . . . [T]he fact of the matter is many courts across the nation have granted compassionate release and reduced sentences for the same reasons Mr. Olivares asks this Court to consider.

Id. at p. 13.   Mr. Olivares refers the court to a number of district court decisions which found mandatory life sentences an extraordinary and compelling reason to reduce those defendants' sentences to terms of years.   Id. at pp. 13-14 (references omitted).

Addressing the § 3553(a)(6) factor, Mr. Olivares points to the disparity of sentences received by his co-defendants and the fact that as of the date of his reply brief he has served "10 years, 7 months, and 4 days, of his sentence." Id. at p. 17.   Finally, Mr. Olivares reminds the court that upon his release from prison he will be deported.   Id. at p. 16.

I.   SECTION 404

The Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. No. 111-220, 124 Stat. 2372, "reduced the sentencing disparity between cocaine base and powder cocaine[.]"   McDonald, 944 F.3d at 771 (referencing Dorsey v. United States, 567 U.S. 260, 269 (2012); other internal reference omitted). Those "changes did not apply to defendants sentenced before August 3, 2010." Id. (referencing Dorsey, 567 U.S. at 263).

The First Step Act made "certain provisions of the Fair Sentencing Act retroactive."   McDonald, 944 F.3d at 771.   "[S]ection 404(b) of the First Step Act allows a district court to 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.' "   Id. (citing First Step Act § 404(b)).   "A 'covered offense' is defined as 'a violation of a Federal criminal statute, the statutory

penalties for which were modified by section 2 or 3 of the Fair Sentencing Act
. . . that was committed before August 3, 2010.' "   Id. (citing First Step Act
§ 404(a)).   "Section 404 is the only First Step Act provision that applies
retroactively."   United States v. Amphavannasouk, CR 03-40111-4,
2019 WL 6895946, at *2 (D.S.D. Dec. 18, 2019).

The cases cited by Mr. Olivares in support of his § 404 motion are all
cocaine cases.   (Docket 1403 at pp. 3-4).   Mr. Olivares' drug convictions are
not a "covered offense" under § 404 of the First Step Act because they involve
methamphetamine not crack cocaine.   Id.   See also United States v. Jones,
No. 19-5433, 2019 WL 5436199, at *1 (6th Cir. Sept. 12, 2019) (§ 404 only
applies to crack cocaine offenses); United States v. Copple, Case No. 17-cr-
40011-009, 2019 WL 486440, at *2 (S.D. Ill. Feb. 7, 2019) (First Step Act
applies only to crack cocaine offenses); United States v. Gonzalez-Oseguera,
Crim. No. 06-00593, 2019 WL 1270916, at *2 (D. Haw. Mar. 19, 2019) (same).

Mr. Olivares' motion for relief under § 404 of the First Step Act is denied.

II.   SECTION 401

Mr. Olivares seeks compassionate release under § 401 of the First Step
Act in combination with 18 U.S.C. § 3582(c)(1)(A).   (Dockets 1398, 1427 &
1436).   The government opposes Mr. Olivares' motion.   (Docket 1430).

A.     DEFENDANT'S RIGHT TO SEEK RELIEF

Section 3582(c) permits the district court to consider a prisoner's request

for compassionate release after exhausting the administrative remedies

mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant
> has fully exhausted all administrative rights to appeal a failure of
> the Bureau of Prisons to bring a motion on the defendant's behalf or
> the lapse of 30 days from the receipt of such a request by the warden
> of the defendant's facility, whichever is earlier, may reduce the term
> of imprisonment (and may impose a term of probation or supervised
> release with or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), after considering the
> factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that . . . extraordinary and compelling reasons
> warrant such a reduction . . . and that such a reduction is consistent
> with the applicable policy statements issued by the Sentencing
> Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Mr. Olivares submitted a request for reduction of his sentence on

January 31, 2020.   (Docket 1427-2 at p. 2).   The warden denied Mr. Olivares'

request for compassionate release on February 6, 2020.   (Docket 1427-3).

The court finds Mr. Olivares exhausted the administrative relief provision in

§ 3582(c)(1)(A).   The court will address the merits of Mr. Olivares' request.

B.     THE COURT'S ROLE

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and

compelling reasons' that might merit compassionate release."   United States v.

McCoy, 981 F.3d 271, 276 (4th Cir. 2020).   That task was left to the United

States Sentencing Commission.   See 28 U.S.C. § 994(t).   Prior to the First

14

Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."   See id.   Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling.   U.S.S.G. § 1B1.13 comment. n.1.   The four categories have not been updated since December 2018 when the First Step Act became law.[13] The United States Courts of Appeals for the Second, Third, Fourth, Fifth Sixth, Seventh, Ninth, Tenth and the D.C. Circuits have addressed the court's authority under the First Step Act.[14]   See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); United States v. Andrews, 12 F.4th 255 (3d Cir. 2021); McCoy, 981 F.3d 271; United States v. Shkambi, 993 F.3d 388 (5th Cir. 2021);United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); United States v.

---

[13]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two short of the four it needs to amend the [U.S.S.G.]."   United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).   See also United States v. Maumau, 993 F.3d 821, 836 (10th Cir. 2021) ("Since the First Step Act was enacted, the Commission has had only two voting members.   Thus, the Commission has been unable to comply with its statutory duty of promulgating a post-First Step Act policy statement regarding the appropriate use of the sentence reduction provisions of § 3582(c)(1)(A)(i).").

[14]The United States Court of Appeals for the Eighth Circuit had several opportunities to address this issue but declined to do so.   United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. 2020) and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).

Gunn, 980 F.3d 1178 (7th Cir. 2020); United States v. Aruda, 993 F.3d 797,

802 (9th Cir. 2021); United States v. McGee, 992 F.3d 1035, 1050 (10th Cir.

2021); and United States v. Long, 997 F.3d 342, 355 (D.C. Cir. 2021).

The Second Circuit identified the question at the heart of these cases,

which is "whether the First Step Act allows courts independently to determine

what reasons, for purposes of compassionate release, are 'extraordinary and

compelling,' or whether that power remains exclusively with the BOP Director

as stated in Application Note 1(D)."   Brooker, 976 F.3d at 234.   The Second

Circuit concluded "that, despite Application Note 1(D), the First Step Act freed

district courts to exercise their discretion in determining what are

extraordinary circumstances."   Id.   The court held the language of U.S.S.G.

§ 1B1.13 "is clearly outdated and cannot be fully applicable."   Id. at 235.

"[T]he First Step Act freed district courts to consider the full slate of

extraordinary and compelling reasons that an imprisoned person might bring

before them in motions for compassionate release.   Neither Application Note

1(D), nor anything else in the now-outdated version of Guideline § 1B1.13,

limits the district court's discretion."   Id. at 237; see also Gunn, 980 F.3d at

1180 (agreeing with the Second Circuit that the Guidelines Manual "does not

curtail a district judge's discretion"); Jones, 980 F.3d at 1111 ("In cases where

incarcerated persons file motions for compassionate release, federal judges . . .

have full discretion to define 'extraordinary and compelling' without consulting

the policy statement § 1B1.13."); McCoy, 981 F.3d at 283 ("As of now, there is

16

no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction.").

C.     THE STATUTORY IMPACT OF SECTION 401

The First Step Act significantly changed the interface between 18 U.S.C. § 851 and 21 U.S.C. § 841(b)(1).   Section 401 of the First Step Act is entitled "REDUCE AND RESTRICT ENHANCED SENTENCING FOR PRIOR DRUG FELONIES."   (First Step Act § 401) (capitalization in original).   Specifically, § 401 amended 21 U.S.C. § 841(b)(1).

[I]n subparagraph (A), in the matter following clause (viii)—

(i)     by striking "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such  person shall be sentenced to a term of imprisonment which may not be less than 20 years" and inserting the following: "If any person commits such a violation after a prior conviction for a serious drug felony . . . has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years"; and

(ii)    by striking "after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release" and inserting the following: "after 2 or more prior convictions for a serious drug felony . . . have become final, such person shall be sentenced to a term of imprisonment of not less than 25 years."

17

Id. § 401(a)(2).   In other words, a defendant convicted with two prior drug felonies faces not a mandatory life sentence but a mandatory minimum sentence of 25 years.   Id.   Also, a defendant convicted with one prior drug felony faces a mandatory minimum sentence of 15 years not a mandatory minimum sentence of 20 years.   Id.

Section 401 added a new definition in 21 U.S.C. § 802 for "serious drug felony."

> The term 'serious drug felony' means an offense described in section 924(e)(2) of title 18, United States Code, for which—
>
> (A)   the offender served a term of imprisonment of more than 12 months; and
>
> (B)   the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense.

Id. § 401(a)(1) (adding 21 U.S.C. § 802 ¶ 57).[15]   Section 924 of Title 18 now defines a serious drug offense as follows:

> [T]he term "serious drug offense" means—
>
> (i)   an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . for which a maximum term of imprisonment of ten years or more is prescribed by law; or
>
> (ii)   an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the

---

[15]Congress mistakenly created a second subparagraph 57 in 21 U.S.C. § 802.   See Federal Criminal Code and Rules, Thomson Reuters West Law (2021 ed.).

> Controlled Substances Act (21 U.S.C. 802)), for
> which a maximum term of imprisonment of ten
> years or more is prescribed by law[.]

18 U.S.C. § 924(e)(2)(A)(i) & (ii).

Section 401(c) provided its amendments "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."   (First Step Act § 401(c)).   The reduced penalties under § 401 are not retroactive.   McGee, 992 F.3d at 1046 ("What we do know with certainty . . . is that Congress chose not to make this statutory change retroactive to all defendants who were sentenced under § 841(b)(1)(A) prior to the First Step Act.").

In McGee, the defendant was serving a life sentence for a drug offense under 21 U.S.C. § 841, which at that time provided for a mandatory life sentence for an individual convicted with two prior felony drug offenses. McGee, 992 F.3d at 1038.   "Congress chose not to afford relief to all defendants who, prior to the First Step Act, were sentenced to mandatory life imprisonment under § 841(b)(1)(A), [but there is] nothing in § 401(c) or any other part of the First Step Act [that] indicates that Congress intended to prohibit district courts, on an individualized, case-by-case basis, from granting sentence reductions under § 3582(c)(1)(A)(i) to some of those defendants."   Id. at 1047.

The conclusion reached in McGee is adopted by numerous courts. "[D]efendants sentenced to life under the old version of § 841(b)(1)(A) may qualify for relief based on a gross disparity with the sentence they would face

19

today."   United States v. Brown, No. 06-CR-327, 2020 WL 7401617, at *5

(E.D. Wis. Dec. 17, 2020) (referencing United States v. Williams, Case No. 5:12-

cr-14, 2020 WL 5834673, at *7 (W.D. Va. Sept. 30, 2020) ("[E]ven if Williams

did meet the 'serious drug felony' requirement . . . he would only face a

mandatory minimum of 25 years' imprisonment, a far cry from the mandatory

life imposed."); United States v. Day, 474 F. Supp. 3d 790, 860 (E.D. Va. 2020)

(granting relief where mandatory sentence would now be 15 years rather than

life); United States v. Ledezma-Rodriguez, 472 F. Supp. 3d 498, 504 (S.D. Iowa

2020) (granting relief where the defendant's mandatory sentence on a drug

count would be 10 years rather than life); United States v. Vigneau, 473 F.

Supp. 3d 31, 36 (D. R.I. 2020) ("Courts . . . have determined that unusually

long sentences by today's standards could support an 'extraordinary and

compelling' reason to reduce a sentence.") (references omitted).

The same analysis holds true for § 924(c) convictions impacted by the

First Step Act.   "Relevant here, § 924(c)(1)(C) was amended to clarify that the

consecutive mandatory minimum sentence of 25 years only applies when a

defendant commits a subsequent § 924(c) violation after a prior § 924(c)

conviction has become final."   Cooper, 996 F.3d at 286.   "Although this

amendment to § 924(c) did not apply retroactively to Cooper's sentence, . . . if

Cooper were sentenced today, he would be subjected to a significantly lower

sentence: a 10-year mandatory consecutive sentence (5 years for each of

Cooper's two § 924(c) convictions), rather than the imposed 30-year sentence (5 years for the first § 924(c) conviction and 25 years for the second)."   Id.

"There is a growing consensus among Circuit courts that the severity of a (pre-First Step Act) § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief in certain cases." United States v. Lee, No. CR 04-11, 2021 WL 3129243, at *3 (E.D. La. July 23, 2021) (referencing Cooper, 996 F.3d at 289; McCoy, 981 F.3d at 285; United States v. Black, 999 F.3d 1071, 1076 (7th Cir. 2021); United States v. Owens, 996 F.3d 755, 760 (6th Cir. 2021)).

"As other courts have reasoned, '[i]t is not unreasonable for Congress to conclude that not all defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis.' "   Lee, 2021 WL 3129243, at *4 (citing United States v. Maumau, No. 2:08-CR-00758, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020); United States v. Bryant, Crim. No. 95-202, 2020 WL 2085471, at *3 (D. Md. Apr. 30, 2020), aff'd sub nom. McCoy, 981 F.3d 271).   "Moreover, granting compassionate release on the basis of the amended § 924(c) is not obviously contrary to congressional intent."   Lee, 2021 WL 3129243, at *4.

21

In <u>Maumau</u>, the Tenth Circuit observed:

> [T]he district court's decision indicates that its finding of "extraordinary and compelling reasons" was based on its individualized review of all the circumstances of Maumau's case and its conclusion "that a combination of factors' warranted relief, including: "Maumau's young age at the time of" sentencing; the "incredible" length of his stacked mandatory sentences under § 924(c); the First Step Act's elimination of sentence-stacking under § 924(c); and the fact that Maumau, "if sentenced today . . . would not be subject to such a long term of imprisonment."

<u>United States v. Maumau</u>, 993 F.3d 821, 837 (10th Cir. 2021.   The court affirmed the district court's decision.   <u>Id.</u>

"The First Step Act's clarification of § 924(c) resulted in not just any sentencing change, but an exceptionally dramatic one."   <u>McCoy</u>, 981 F.3d at 285.   The Fourth Circuit found "that the district courts permissibly treated as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' § 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act." <u>Id.</u> at 286.   The <u>McCoy</u> court "emphasiz[ed] . . . these judgments were the product of individualized assessments of each defendant's sentence."   <u>Id.</u>

A review of <u>Chatharath</u>, submitted by the government as a precedent setting case in the District of South Dakota, discloses that court was not presented with the extensive arguments made on Mr. Olivares' behalf or the conclusions reached by the circuit courts identified above that § 401, standing alone, may not qualify a defendant for a sentence reduction.   Further, the <u>Chantharath</u> court concluded that even if it had the authority, it would not

22

reduce the defendant's life sentence because the "circumstances do not rise to the level of 'extraordinary and compelling reasons' justifying a sentence reduction."   Chantharath, 4:10-cr-40004-01, Docket 1008 at p. 9.

The court finds it has the independent authority to determine whether Mr. Olivares has shown "extraordinary and compelling reasons" to be granted a compassionate reduction in his sentence.   18 U.S.C. § 3582(c)(1)(A)(i).   The purpose of the First Step Act was to expand the availability of relief based on judicial findings of extraordinary and compelling reasons.

### D.   THE IMPACT OF SECTION 401 ON MR. OLIVARES

The 851 Information filed against Mr. Olivares asserted two prior state felony drug convictions: (1) the Adams County, Colorado, conviction for a controlled substance conspiracy;[16] and (2) the Arapahoe County, Colorado, conviction for possession of more than one gram of a controlled substance.[17] (Docket 1058).   In the Adams County conviction, Mr. Olivares was sentenced to three years custody in the Colorado Department of Corrections.   (Docket 1058-1).   In the Arapahoe County conviction, Mr. Olivares was sentenced to

---

[16]"Mr. Olivares pled guilty to and was convicted of a conspiracy to distribute cocaine[.]"   (Docket 1182 at p. 10) (referencing Trial Exhibit 1B at pp. 4 & 7).   At the 851 Hearing, the exhibits associated with both Colorado convictions were bundled as Exhibit 150.   Id. at p. 10 n.7.

[17]During the 851 Hearing, the court found Mr. Olivares "was convicted of possession of less than one gram of methamphetamine[.]"   (Docket 1182 at p. 11) (referencing Trial Exhibit 1C at pp. 1, 3 & 9).   That conviction still constituted a felony drug offense.   Id. at p. 12.

18 months custody in the Colorado Department of Corrections.   (Docket 1058-2).   Both prior convictions were felony convictions for which Mr. Olivares served more than 12 months in custody.   21 U.S.C. § 802(57).

Relevant to Mr. Olivares' case, § 401 of the First Step Act removed the phrase "a prior conviction for a felony drug offense" and mandated instead that the defendant must have had "a prior conviction for a serious drug felony" to be subject to enhanced punishments under 21 U.S.C. § 841(b)(1)(A).   First Step Act § 401(b)(1).   To qualify as a "serious drug felony," a prior state conviction must have involved the manufacture, distribution or possession with intent to manufacture or distribute a controlled substance.   18 U.S.C. § 924(e)(2)(A)(ii).

The Adams County conviction continues to qualify as a "serious drug offense" under 18 U.S.C. § 924(e)(2)(A)(ii).[18]   It involved the distribution of cocaine and was a "class 3 felony" in Colorado which mandated "a minimum of four years imprisonment and a maximum of twelve years imprisonment." (Docket 1182 at p. 10).   For the offense Mr. Olivares served more than 12 months in custody.   (Docket 1058).

As a result of the First Step Act, the Arapahoe County conviction does not qualify as a prior "serious drug offense."   18 U.S.C. § 924(e)(2)(A)(ii).   The Arapahoe County conviction was for the possession of methamphetamine and

---

[18]Defendant's argument he was convicted of possessing with the intent to distribute morpholine, a substance not included in the federal definition of controlled substance (Docket 1427 at pp. 6-9), is barred by *res judicata*.   See Docket 1182.

not for the possession with intent to distribute the controlled substance. (Docket 1058-2; see also Docket 1182 at p. 11 and Trial Exhibit 1B).   Striking the Arapahoe County conviction from the 851 Information, Mr. Olivares faces a mandatory minimum of 15 years up to life imprisonment under 21 U.S.C. 841(b)(1)(A) and not a mandatory life sentence.

As indicated at the time of Mr. Olivares' sentencing, the court was very troubled by having to impose a statutory mandatory sentence of life imprisonment.   Neither the crimes of conviction nor Mr. Olivares' two prior felony drug offenses warranted a life sentence.   "[T]he First Step Act is instructive," and demonstrates "Congress's intent to mitigate the harsh and sometimes unjust effects of the sentencing laws."   Marks, 2020 WL 1908911, at *16.   "[A] life sentence is objectively inhumane here[.]"   United States v. Santamaria, 516 F. Supp. 3d 832, 836 (S.D. Iowa 2021).   "[I]t is hard to argue that the unfairness of keeping a man in prison for decades more than if he had committed the same crime today is anything other than compelling."   Id.

Applying the First Step Act, the court finds this factor constitutes a "extraordinary and compelling reason" for granting a compassionate reduction in Mr. Olivares' sentences for the convictions on counts 1 and 5.[19]   18 U.S.C. § 3582(c)(1)(A)(i).   The court believes when considering the sentencing disparity—which would result by not granting Mr. Olivares' motion when

---

[19]Count 9 is not impacted by the First Step Act as the Act did not change the enhanced punishment provision of 21 U.S.C. § 841(b)(1)(B).

compared to a defendant sentenced after the First Step Act with the same prior serious drug offense—that disparity constitutes an additional, extraordinary and compelling reason supporting a compassionate reduction in Mr. Olivares' sentences.   "Section 3582(c)(1)(A) provides a safety valve against what otherwise would be a harsh, unjust, and unfair result stemming from a non-retroactivity clause."  United States v. McPherson, 454 F. Supp. 3d 1049, 1053 (W.D. Wash. 2020).

As part of this analysis, the court must consider the sentences received by Mr. Olivares' four co-defendants for their 18 U.S.C. § 841(b)(1)(A) convictions.   Three co-defendants received 120 months custody and one co-defendant received 108 months custody.   (Dockets 468, 605, 635 & 759).   It is acknowledged these co-defendants all entered guilty pleas and received the benefits of their plea agreements.   This factor will be discussed in more detail later in this order.

E.     THE § 3553(a) FACTORS

1.     The nature and circumstances of the offenses and the history and characteristics of the defendant

The court well recalls the trial evidence which resulted in Mr. Olivares' convictions.   That evidence is detailed in the PSR.   (Docket 1157 ¶¶ 17-29). Mr. Olivares was a medium level methamphetamine drug dealer who either personally or through co-conspirators made almost weekly trips to Denver, Colorado, to obtain drugs.   He frequently traded drugs for firearms and used

firearms to intimidate and keep his lower level co-conspirators in line.   Based on the trial evidence, the court concluded Mr. Olivares' conspiracy involved at least 5 kilograms but less than 15 kilograms of methamphetamine.   Id. ¶ 29. Mr. Olivares possessed the seven firearms identified in the indictment and upon which the firearm counts of conviction are based.

Mr. Olivares was born in Ciudad Juarez, Chihuahua, Mexico.   Id. ¶ 75. It is unclear when or how he entered the United States but school records indicate Mr. Olivares attended grade school in El Paso, Texas, and through the eighth grade in the Los Angeles Unified School District in California.   Id.   Mr. Olivares was ultimately granted legal permanent status in 1990.   Id. Following completion of his sentences in this case and completion of any remaining sentences in Colorado, Mr. Olivares will be subject to deportation.

2.   The need for the sentence to (A) reflect the seriousness of the offense, promote respect for the law and provide just punishment; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes by the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Mr. Olivares was convicted of six felony offenses at trial.   Each of those offenses is separately a serious crime for which the court must impose an appropriate and just sentence.   But the mandatory life sentences are not appropriate when a lesser term of years can reflect the seriousness of criminal conduct and afford adequate deterrence.   Respect for the law is not promoted by the shocking unfairness of Mr. Olivares' life sentences in a case where the

maximum term received by highly culpable co-conspirators was ten years in prison.   At the time of Mr. Olivares' sentencing, the court considered the mandatory life sentences unjust and maintains that position today.

The court recognizes the need "to protect the public from further crimes of the defendant."   18 U.S.C. § 3553(a)(2)(C).   However, excessive incarceration is not the only kind of sentence available, and there are other ways to achieve the same public protection.   Id. § 3553(a)(3).   Mr. Olivares will be deported upon release, which is itself a punishment.   Padilla v. Kentucky, 559 U.S. 356, 364 (2010) ("[D]eportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants[.]") (footnote omitted)).   Any lingering public safety concerns are dispelled by the fact of Mr. Olivares' anticipated deportation after he completes a reduced custody term.

3.   The United States Sentencing Guidelines range

Based on the application of § 401 of the First Step Act, statutory custody provisions are amended as follows:

Counts 1 and 5 (21 U.S.C. §§ 841(b)(1)(A) and 851): the mandatory minimum term of imprisonment is 15 years to life.   (First Step Act § 401(a)(2)(i));

Count 2 (18 U.S.C. § 924(c)(1)(A)): the mandatory minimum term of imprisonment is 5 years to life.   The term of imprisonment on Count 2 must be imposed consecutively to any other counts;

Counts 3 and 4 (18 U.S.C. § 924(a)(2)): the maximum term of imprisonment is 10 years on each count; and

28

Count 9 (21 U.S.C. § 841(b)(1)(B) and 851): the mandatory minimum term of imprisonment is 10 years to life.

The guideline ranges remain as originally calculated:

Group 1:   Counts 1, 3, 4, 5 & 9 – Conspiracy to distribute a controlled substance:

| | |
|---|---|
| Total Offense Level | 43 |
| Criminal History Category | VI |
| Guideline Imprisonment Range | Life |

Count 2 carries a mandatory minimum term of imprisonment of 5 years to life, which must be served consecutive to any other sentence imposed.

(Docket 1157 ¶¶ 78 & 79).

4.   <u>Any pertinent Sentencing Commission policy statement</u>

The court identifies no policy statement of the United States Sentencing Commission which would be pertinent to this case.

5.   <u>The need to avoid unwarranted sentence disparities</u>

Three of Mr. Olivares' co-defendants received statutory mandatory minimum custody sentences and one co-defendant received a 108-month sentence on their 18 U.S.C. § 841(b)(1)(A) convictions.   (Dockets 468, 605, 635 & 759).   These co-defendants' PSRs reflected the following relevant information:[20]

---

[20]Sentencings in these cases occurred before the District of South Dakota filed under seal each defendant's PSR in CM/ECF.   These PSRs are available to government counsel in their own files.

| Co-Defendant | Total Offense Level | Criminal History Category | Guideline Range | Sentence Imposed |
|---|---|---|---|---|
| Michael Dillon | 28 | III | 120-121 | 120 |
| Matt Allen | 33 | VI | 235-293 | 120 |
| Robert Gay | 33 | IV | 188-235 | 120 |
| Gerald Long Soldier | 29 | I | 87-108 | 108 |

Even accounting for Mr. Olivares' prior serious felony drug offenses, his life sentences are an unjust and unwarranted disparity.

6.  <u>The need to provide restitution to any victims</u>

While distribution of methamphetamine certainly impacts the community and creates victims of drug abuse and addiction, for sentencing purposes there are no recognizable victims for whom restitution is a consideration.

F.    RECTIFYING THE INJUSTICE

Mr. Olivares faced mandatory life sentences only because the government chose to file the 851 Information.   Neither of the prior convictions marked Mr. Olivares as a career drug distribution offender.   Yet under § 851, these convictions triggered mandatory life sentences.   This could not be the outcome in light of the justice-based changes Congress advanced through the First Step Act.   The court grants Mr. Olivares' motion for compassionate relief because it is supported by extraordinary and compelling reasons as well as the § 3553(a) factors.

G.     RESENTENCING

Mr. Olivares has been in pretrial and BOP custody for more than 11 years.   He is nearly 50 years old.   The court presumes much has changed in his life since the preparation of the original PSR.   The court will require the preparation of a new PSR which focuses on Mr. Olivares' character, his danger to the public, his likelihood of recidivism, his need for rehabilitation, the guideline calculation had he been charged and convicted after the First Step Act was passed, and any other relevant considerations.   The United States Marshals Service must immediately arrange for Mr. Olivares' transportation to South Dakota so he can meet with his attorney and prepare for the re-sentencing hearing.   Upon Mr. Olivares' arrival in South Dakota the court will establish deadlines for completion of the new PSR and a date for re-sentencing.

**ORDER**

Based on the above analysis, it is

ORDERED that defendant's motions (Dockets 1398, 1403, 1416 & 1427) are granted in part and denied in part.

IT IS FURTHER ORDERED that defendant's motion for relief under § 404 of the First Step Act (Docket 1403) is denied.

IT IS FURTHER ORDERED that defendant's motion for relief under § 401 of the First Step Act (Docket 1427) is granted.

IT IS FURTHER ORDERED that the judgment (Docket 1166) imposed on May 27, 2015, is vacated.

31

IT IS FURTHER ORDERED that the United States Marshals Service shall arrange for Mr. Olivares' transportation to the District of South Dakota for re-sentencing.

IT IS FURTHER ORDERED that upon Mr. Olivares' arrival in the District of South Dakota the court will enter a scheduling order for the preparation of a new presentence investigation report and a new sentencing date.

IT IS FURTHER ORDERED that the Clerk of Court shall deliver a copy of this order to the United States Marshals Service.

Dated November 8, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE